IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN JOYCE,                        :
      Plaintiff
                                    :

      vs.                           :    CIVIL NO. 1:CV-07-1421

BOBCAT OIL & GAS, INC.,             :
BEAR CREEK OIL & GAS, INC.,
ELLIS MEISTER and                   :
GORDON TUCK,
      Defendants                    :


*M E M O R A N D U M*

I.   *Introduction*

      Plaintiff, Kevin Joyce, filed this lawsuit against
Defendants, Bobcat Oil & Gas, Inc., Bear Creek Oil & Gas, Inc.,
Ellis Meister, and Gordon Tuck. Meister and Tuck are alleged to
be controlling shareholders and officers of Bobcat and Bear
Creek. Bobcat and Bear Creek have certain interests in oil and
gas leases and sold a portion of their rights to Plaintiff in
nine agreements. Plaintiff has set forth nine claims. Asserting
that Defendants fraudulently induced him into purchasing the
rights, Plaintiff has made securities-fraud claims under Rule
10b-5 and the Pennsylvania and New Jersey counterparts to that
rule. State-law claims for fraud, negligent misrepresentation,
breach of fiduciary duty and breach of contract have also been
made. Finally, Plaintiff alleges that the agreements violate
federal and state law requiring the registration of securities.

We are considering Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). The motion argues that the 10b-5 claim is deficient because it fails to allege loss causation and scienter and to meet special pleading requirements imposed on federal securities fraud claims. The motion extends this argument to the state securities-fraud claims and common-law claims based on fraud and negligent misrepresentation. The motion also raises the bar of the applicable statute of limitations to some of the claims.

II.   *Standard of Review*

In considering a motion to dismiss, we must accept as true the factual allegations in the complaint and construe any inferences to be drawn from them in Plaintiff's favor. *See Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). The court is not limited to evaluating the complaint alone. It may consider documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). It may also consider "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading . . . ." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly*, _____ U.S. _____, _____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d. 929 (2007). For the most part, detailed factual allegations are not required, *id*. at _____, 127 S.Ct. at 1964-65; *Pryor*, *supra,* 288 F.3d at 564, only a "short and plain statement" showing the right to relief. *Pryor*, *supra,* 288 F.3d at 564 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and quoting Fed. R. Civ. P. 8(a)(2)).

However, allegations of fraud must be pled with specificity. *See* Fed. R. Civ. P. 9(b)("the circumstances constituting fraud . . . shall be stated with particularity"). And in a federal securities fraud action, under the Private Securities Litigation Reform Act of 1995 (PSLRA), if a plaintiff alleges that a defendant "made an untrue statement of material fact" or "omitted to state a material fact" that was necessary to make a statement made not misleading in the circumstances, "the complaint [must] specify each statement alleged to have been misleading" [and] the reason or reasons why the statement is misleading . . ." 15 U.S.C. § 78u-4(b)(1)(A) and (B). *See also Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007)(citing § 78u-4(b)(1)(B)).

The PSLRA also imposes a special pleading requirement relevant to the element of scienter in a 10b-5 claim. When a federal securities claim seeking damages requires a plaintiff to prove "that the defendant acted with a particular state of

mind," the PSLRA requires the plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). For the scienter requirement in a 10b-5 claim, this means the plaintiff must allege facts giving rise to an inference of scienter that is "cogent and compelling," not "merely 'reasonable' or 'permissible'"; that is, "strong in the light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, ___, 127 S.Ct. 2499, 2510, 168 L.Ed.2d 179 (2007). In applying this standard, the court must thus consider competing, plausible inferences of nonculpable intent, and the inference of fraudulent intent must be "at least as compelling" as these competing inferences. *Id.* at ___, 127 S.Ct. at 2510. The complaint in a 10b-5 claim must also be examined in its entirety. <u>Id</u>. at ___, 127 S.Ct. at 2509.

A 10b-5 claim must also satisfy Rule 9(b)'s pleading requirements. *In re: Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256, 276 (3d Cir. 2006). "As applied to Section 10(b) claims, 'Rule 9(b) requires a plaintiff to plead (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.'" *Id.* (quoted case omitted). "Moreover, 'Rule 9(b) requires plaintiffs to identify

4

the source of the allegedly fraudulent misrepresentation or omission." *Id.* (quoted case omitted); *see also In re Rockefeller Ctr. Properties, Inc.*, 311 F.3d 198, 216 (3d Cir. 2002)(Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements"). "In sum, 'Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'–that is, the 'who, what, when, where and how' of the events at issue.'" *In re: Suprema Specialties,* 438 F.3d at 276 (quoted case omitted).

III.  *Background*

Joyce alleges that between March 29, 2004, and October 14, 2005, the defendants sold him securities in the form of agreements, each entitled a "Working and Operating Interest Agreement." Plaintiff executed nine of these agreements, (Am. Compl. ¶ 12), attached as exhibits to Defendants' motion to dismiss.[1] The first eight are between Plaintiff and Bobcat for

---

[1] As noted above, based on *Lum* and *Pryor*, we can consider these documents even though they were not attached to the amended complaint since they form the basis of Plaintiff's claims and Plaintiff does not challenge their authenticity. *See also Winer Family Trust*, *supra*, 503 F.3d at 327 (in examining the sufficiency of a 10b-5 claim, courts can consider "additional sources" "normally" considered on a motion to dismiss)(citing *Tellabs*, *supra*, ___ U.S. at ___, 127 S.Ct. at 2509; *Majer v. Sonex Research, Inc.*, Civ. No. 05-606, 2008 WL 282257, at *4 n.2 (E.D. Pa. Jan. 31, 2008)(in a federal securities fraud case relying on the subscription agreements attached to the defendants' motion to dismiss).

wells in West Virginia. The ninth is between Plaintiff and Bear

Creek for a well in Ohio. They are as follows:

> 1. An agreement, dated March 29, 2004, by which Plaintiff purchased a four percent working interest in an oil and gas well in Wayne County, West Virginia, for $12,000 from Bobcat.

> 2. An agreement, dated April 22, 2004, by which Plaintiff purchased a five percent working interest in an oil and gas well in Wayne County, West Virginia, for $15,000 from Bobcat.

> 3. An agreement, dated July 20, 2004, by which Plaintiff purchased a ten percent working interest in an oil and gas well in Wood County, West Virginia, for $20,000 from Bobcat.

> 4. An agreement, dated July 20, 2004, by which Plaintiff purchased a ten percent working interest in an oil and gas well in Wood County, West Virginia, for $20,000 from Bobcat.

> 5. An agreement, dated November 4, 2004, by which Plaintiff purchased a ten percent working interest in an oil and gas well in Wayne County, West Virginia, for $30,000 from Bobcat.

> 6. An agreement, dated April 9, 2005, by which Plaintiff purchased a five percent working interest in an oil and gas well in Wayne County, West Virginia, for $15,000 from Bobcat.

> 7. An agreement, dated April 9, 2005, by which Plaintiff purchased a five percent working interest in an oil and gas well in Wood County, West Virginia, for $10,000 from Bobcat.

> 8. An agreement, dated April 9, 2005, by which Plaintiff purchased a five percent working interest in an oil and gas well in

> Wood County, West Virginia, for $10,000 from
> Bobcat.
>
> 9. An agreement, dated October 14, 2005,
> by which Plaintiff purchased an eight
> percent working interest in an oil and gas
> well in Morgan County, Ohio, for $15,000
> from Bear Creek.[2]

(Am. Compl. ¶ 12; doc. 14, Defs.' Mot. to Dismiss, Ex. A).

Plaintiff alleges that all of the defendants made

"false and fraudulent representations," (Am. Compl. ¶ 19), in

connection with his purchase of these investments. (*Id.* ¶ 20).

The alleged false and fraudulent misrepresentations are

specified in paragraph 17 of the amended complaint.[3] The

paragraph reads as follows:

> 17.  Bobcat, Bear Creek, Ellis and Meister
> made statements to Joyce, including untrue
> statements of material fact and/or omitted
> to state material facts necessary in order
> to make the statements, in light of the
> circumstances under which they were made,
> not misleading, with respect to the
> securities sold to Joyce described in
> Paragraph 12 herein, in the following
> particulars:
>
> (a) By failing to advise Joyce as to the
> use of and/or their intended use of the
> proceeds of his investments in the oil and
> gas wells;

---

[2] The copy of the agreement attached to the motion to dismiss
lists the date as October 4, but we will go by the allegation in the
complaint.

[3] As Defendants note, there are no affirmative material
misrepresentations alleged, only omissions by failing to advise.
Additionally, four of the alleged misrepresentations, subparagraphs
(f), (o), (p), and (q) are really failures to perform under the
agreements.

(b) By failing to advise Joyce of the risks involved in oil and gas investments;

(c) By failing to advise Joyce that he would not have substantive management rights in any of the investments;

(d) By failing to advise Joyce that the drilling operations with respect to the wells were undercapitalized;

(e) By failing to advise Joyce that there was not an available market for oil and gas production from the wells;

(f) By failing to obtain sufficient capital to drill, complete and equip the wells and to advise Joyce of the lack of such capital;

(g) By failing to advise Joyce as to the tax consequences of his investments;

(h) By failing to advise Joyce as to the compensation derived and/or intended to be derived by them from the sale of the securities to Joyce;

(i) By failing to advise Joyce of anticipated oil and gas production declines from the wells;

(j) By failing to advise Joyce as to various governmental and environmental controls that the wells were subject to and their non-compliance with many such regulations;

(k) By failing to advise Joyce that they would be relying upon third-party independent contractors to drill, complete and equip the wells;

(l) By failing to advise Joyce as to the known geology relating to the likelihood of the wells producing oil and gas in commercial quantities;

(m) By failing to advise Joyce of their lack of geologic data relating to the wells;

(n) By failing to advise Joyce as to the
known geology relating to offset wells in
the areas of the wells;

(o) By failing to obtain and keep in
force all bonds and permits required to
drill and operate the wells;

(p) By failing to immediately drill the
wells upon receipt of the investment funds
from Joyce;

(q) By failing to complete the wells that
were drilled;

(r) By failing to advise Joyce that
certain of the oil and gas wells had been
previously drilled or partially drilled, and
by failing to provide him with the details
thereof;

(s) By failing to advise Joyce that the
oil and gas wells were marginally productive
or, following the drilling, redrilling,
and/or completion thereof were likely to be
marginally productive;

(t) By failing to advise Joyce that there
would be substantial delays in the drilling,
redrilling, and/or completion of the wells.

(Am. Compl. ¶ 17.)

Pertinent to Defendants' loss-causation argument,

Plaintiff makes the following allegations:

20.   On the strength of the
representations made by [Defendants], Joyce
made the investments described in Paragraph
12 herein in the aggregate amount of One
Hundred Forty-Seven Thousand ($147,000)
Dollars.

21.   The working interest in the wells
purchased by Joyce were worth substantially
less than One Hundred Forty-Seven Thousand
($147,000) Dollars at the time of his
investments.

9

22.   Joyce would not have made the
investments but for the misrepresentations
set forth in Paragraph 12 herein.

23.   The value of the working interest in
the oil and gas wells acquired by Joyce and
more particularly described in Paragraph 12
herein was worth, at the time that Joyce
purchased such investments, substantially
less than One Hundred Forty-Seven Thousand
($147,000) Dollars.

24.   Joyce has suffered monetary damages
as a result of the misrepresentations of
[Defendants] more particularly described in
Paragraph 17, herein.

(Am. Compl. ¶¶ 20-24.)

Plaintiff sets forth the following causes of action.
In Count One, he makes a claim under section 12(a)(1) of the
Securities Act of 1933, 15 U.S.C. § 77*l*(a)(1), for failing to
register the agreements as required by 15 U.S.C. § 77e(a),
alleging that they had not been registered and were not exempt
from registration. See Am. Compl. ¶ 12 (referring to the
agreements as "unregistered and nonexempt securities"). In Count
Two, he makes a claim under the Pennsylvania and New Jersey
state-law counterparts to section 77e(a); in Pennsylvania, 70
P.S. § 1-201 (Purdon's 2004), and in New Jersey, N.J.S.A. 49:3-
60. These state statutory provisions also prohibit the sale of
unregistered and nonexempt securities.[4]

---

[4] New Jersey law is cited apparently because beginning with the
sixth agreement, Plaintiff's address was listed as a New Jersey one.
Before that agreement, Plaintiff's address was listed as being in
Pennsylvania.

In Count Three, Plaintiff makes a claim for a violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2), by alleging that "the prospectuses and communications described in paragraph 17" contained untrue statements of material fact, or omissions of material fact, that made them "mislead[ing] in light of the circumstances under which they were made," (Am. Compl. ¶ 33), and that he relied on the misrepresentations to his damage.

In Count Four, Plaintiff makes a claim for a violation of Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1) and (2) and section 77q(b), by alleging that Defendants used the mail to employ a device, scheme, or artifice to defraud Plaintiff and to obtain money by their material misstatements and omissions.

In Count Five, Plaintiff makes a claim for a violation of Rule 10b-5, 17 C.F.R. § 240.10b-5, alleging that Defendants knowingly used the misrepresentations as part of a fraudulent scheme to sell Plaintiff the oil and gas interests. (Am. Compl. ¶¶ 40-41). In Count Six, Plaintiff sets forth claims under the Pennsylvania and New Jersey state-law counterparts to Rule 10b-5; in Pennsylvania, 70 P.S. § 1-401 (Purdon's 2004), and in New Jersey, N.J.S.A. § 49:3-52.

In Count Seven, Plaintiff makes a claim for common-law fraud, alleging that Defendants knowingly or recklessly made the misrepresentations and that Plaintiff relied on these

misstatements to purchase the securities. In Count Eight,
Plaintiff makes a state-law claim for negligent
misrepresentation, alleging that the misrepresentations were
made "with reckless disregard for the truth . . . and without
reasonable ground to believe that the representations made were
accurate . . ." (Am. Compl. ¶ 51.)

In Count Nine, Plaintiff sets forth claims for breach
of contract and breach of fiduciary duty. He alleges that
Defendants failed to operate the oil and gas wells prudently,
failed to produce the maximum quantity of oil and gas, and
permitted waste to occur. As a result, Plaintiff "suffered the
financial losses" described in paragraphs 12 and 20 of the
Amended Complaint.

As relief, Plaintiff seeks rescission, an accounting,
compensatory and punitive damages, and attorney's fees.

IV.   *Discussion*

A.   *The 10b-5 Claim in Count Five Fails
      to Allege the Elements of the Claim
      with the Necessary Specificity*

The elements of a claim under Rule 10b-5 are: (1) a
material misrepresentation (or omission); (2) scienter; (3) a
connection with the purchase or sale of a security; (4) reliance
(transaction causation); (5) economic loss; and (6) loss
causation, or a causal connection between the material
misrepresentation and the loss. *McCabe v. Ernst & Young, LLP*,

494 F.3d 418, 424 (3d Cir. 2007) (quoting in part *Dura Pharms.,*
*Inc. v. Broudo,* 544 U.S. 336, 341-42, 125 S.Ct. 1627, 1631, 161
L.Ed.2d 577 (2005)).

In moving to dismiss the Rule 10b-5 claim, Defendants
argue that it has not been properly pled for the following
reasons. First, Plaintiff has failed to plead the elements of
economic loss and loss causation. Second, Plaintiff has failed
to adequately plead scienter. Third, Plaintiff has failed to
comply with the PSLRA by alleging with particularity the
misleading statements or omissions and why the statements were
misleading. Fourth, Plaintiff has failed to plead the claim with
the particularity required under Fed. R. Civ. P. 9(b) for
allegations of fraud. We agree with all four arguments.

1. *Plaintiff Has Failed to Plead*
   *Economic Loss and Loss Causation*

First, Defendants argue that Plaintiff has failed to
plead the elements of economic loss and loss causation, pointing
out that there are no allegations that the Plaintiff's oil and
gas interests are worth less now than when he purchased them or
that the alleged misrepresentations caused any decrease in
value. In part, Plaintiff counters by arguing that paragraphs
21, 22, 23 and 24 of his Amended Complaint establish these two
elements by substantially alleging that he "has suffered
monetary damages as a direct result of the misrepresentations"

and that this economic loss "would not have occurred but for the misrepresentations." (Doc. 19, Pl.'s Opp'n Brief at 2.)

Causation under Rule 10b-5 is "'two-pronged.'" *McCabe*, *supra*, 494 F.3d at 425 (quoted case omitted). The plaintiff must show both transaction causation (reliance) and loss causation. *Id.* Transaction causation is a showing "that but for the fraudulent misrepresentation or omission, the investor would not have purchased or sold the security." *Id.* Loss causation is a showing "that the fraudulent misrepresentation or omission actually caused the economic loss suffered." *Id.* In regard to the economic-loss element, the loss-causation analysis requires that the plaintiff show "a decline in the security's price, thus creating an actual economic loss for the plaintiff." *Id.* at 425-26.

10b-5 claims can be divided into typical and non-typical ones. *Id.* at 425. A typical 10b-5 claim is a "fraud on the market" claim where the plaintiff alleges that the defendant made public misrepresentations or omissions that affected the price of the defendant's publicly traded stock. *Id.* at 425 n.2. A non-typical 10b-5 claim (which the court believes is true of the instant case) involves "misrepresentations or omissions that induced another party into entering a private transaction." *Id.* In any event, the same analysis applies to both types of claims. In both the typical and non-typical 10b-5 claim, the plaintiff must establish transaction causation and loss causation. *Id.* at

425 ("we have distinguished between 'typical' and 'non-typical' claims . . . [b]ut we have consistently required that both transaction causation and loss causation must be established in § 10b cases"). "[E]ven in non-typical § 10(b) cases . . . we have required both loss causation and transaction causation to be established, and have analyzed them separately." *Id.* at 429-30. Additionally, the plaintiff must show a decline in the value of the securities to establish the economic-loss element in both the typical claim, *id.* at 425 (in the typical claim, the plaintiff must show that misrepresentation or omission . . . "caused a decline in the security's price, thus creating an actual economic loss for the plaintiff"), and in the non-typical claim. *Id.* at 426-27 (explaining that allegations of loss causation were sufficient in *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865 (3d Cir. 2000), a non-typical case, when the plaintiff alleged its investment "turned out to be worthless," meaning that it had declined in value to nothing).

Based on the foregoing legal principles, Defendants are correct that Plaintiff has failed to allege loss causation or economic loss. Plaintiff argues that he has, by pointing to paragraphs 21, 22, 23 and 24 of his Amended Complaint. In his view, these allegations establish both elements; as he puts it, that he "has suffered (1) monetary damages (2) as a direct result of the misrepresentations." (Doc. 19, Pl.'s Opposition Br. at 2) (numbering added). We cannot agree.

15

As noted, these allegations (along with ¶ 20) are as follows:

> 20.  On the strength of the representations made by [Defendants], Joyce made the investments described in Paragraph 12 herein in the aggregate amount of One Hundred Forty-Seven Thousand ($147,000) Dollars.
>
> 21.  The working interest in the wells purchased by Joyce were worth substantially less than One Hundred Forty-Seven Thousand ($147,000) Dollars at the time of his investments.
>
> 22.  Joyce would not have made the investments but for the misrepresentations set forth in Paragraph 12 herein.
>
> 23.  The value of the working interest in the oil and gas wells acquired by Joyce and more particularly described in Paragraph 12 herein was worth, at the time that Joyce purchased such investments, substantially less than One Hundred Forty-Seven Thousand ($147,000) Dollars.
>
> 24.  Joyce has suffered monetary damages as a result of the misrepresentations of [Defendants] more particularly described in Paragraph 17, herein.

(Am. Compl. ¶¶ 20-24.)

In *McCabe*, the securities transaction at issue was a merger agreement in which the plaintiffs had agreed to accept shares of the purchasing company's stock. The plaintiffs argued that they could establish loss causation by showing "a causal nexus between" the defendant accounting firm's omissions and the plaintiffs' decision to close the merger. The Third Circuit rejected the argument, explaining that the plaintiffs were

16

essentially relying on transaction causation to prove loss causation but these two elements of a 10b-5 claim have to be proved separately. 494 F.3d at 429-30.[5]

The plaintiffs also argued that loss causation was established by a showing that they were damaged at the moment the merger closed when they sold a company worth almost $48 million and received in exchange consideration worth far less. *Id.* at 432. The Third Circuit rejected this argument for two reasons. First, the plaintiffs had provided no evidence of the value of the consideration they received at the time of the merger. *Id.* at 433. Second:

> More importantly, this argument is inconsistent with controlling precedent. In *Dura,* the Supreme Court explicitly rejected the argument that a § 10(b) plaintiff could satisfy the loss causation requirement simply by showing that "'the price *on the date of purchase* was inflated because of the misrepresentation.'"

*Id.* (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S.Ct. 1627, 1632, 161 L.Ed.2d 577 (2005)(emphasis originating in *Broudo v. Dura Pharms., Inc.*, 339 F.3d 933, 938 (9th Cir. 2003)). The Third Circuit recognized that *Dura* was a

---

[5] As noted, transaction causation (reliance) requires a showing "that but for the fraudulent misrepresentation or omission, the investor would not have purchased or sold the security," *McCabe,* 494 F.3d at 425, essentially what the plaintiffs were arguing, that the misrepresentation induced or caused them to enter into the merger agreement.

typical 10b-5 case but applied its holding to *McCabe*, a non-typical 10b-5 case. 494 F.3d at 433.[6]

Under *McCabe*, Plaintiff's allegations are insufficient to indicate loss causation or economic loss. Paragraphs 20 and 22 allege that Plaintiff entered into the agreements because of Defendants' misrepresentations and omissions, with paragraph 22 specifically mentioning that the investments would not have been made "but for" the misrepresentations. These allegations are similar to those made by the plaintiffs in *McCabe*. The Third Circuit rejected them there as only showing transaction causation. Indeed, when Plaintiff specifically alleges "but for" causation, he is relying on transaction causation, not loss causation.

Nor can Plaintiff rely on the allegations of paragraphs 21 and 22, which both assert that the value of the working interests was worth substantially less at the time he purchased the interests than the $147,000 he paid for  them. This is simply another way of saying that the prices were inflated, and citing *Dura*, *supra*, *McCabe* said such a showing was not enough. We recognize that *McCabe* was dealing with a summary judgment, and that the Third Circuit acknowledged in *McCabe* that a "different approach" would be needed at the motion-to-dismiss

---

[6] In *Dura*, the Supreme Court stated the rationale for the rule. In part, there could be many causes for a lower share price later in time, so the connection between the inflated price and a later economic loss is not "invariably strong." *Dura*, 544 U.S. at 342, 125 S.Ct. at 1631.

stage, 494 F.3d at 427 n.4, but in *Dura*, the Supreme Court stated that such allegations could not survive a motion to dismiss. *Dura*, *supra*, 544 U.S. at 346-47, 125 S.Ct. at 1634. *See also Majer*, *supra*, 2008 WL 282257, at *16 (E.D. Pa.)(in a non-typical 10b-5 case, relying on *Dura* to decide the plaintiffs' lone allegation of loss causation was inadequate when it alleged that defendants' misrepresentations induced them to purchase "essentially worthless" securities).

>    2. *Plaintiff Has Failed to Adequately*
>       *Plead Scienter*

Defendants argue that Joyce has failed to adequately plead scienter, "the defendant's intention 'to deceive, manipulate or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, ___, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007). As noted above, when a federal securities claim seeking damages requires a plaintiff to prove "that the defendant acted with a particular state of mind," the PSLRA requires the plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78-u4(b)(2). For the scienter element in a 10b-5 claim, this means the plaintiff must allege facts giving rise to an inference of scienter that is "cogent and compelling," not "merely 'reasonable' or 'permissible'"; that is, "strong in the light of other explanations." *Tellabs, supra,* ___ U.S. at ___, 127 S.Ct. at 2510. The court must also

19

consider competing, plausible inferences of nonculpable intent, and the inference of fraudulent intent must be "at least as compelling" as these competing inferences. *Id.* at ___, 127 S.Ct. at 2510.

We agree with Defendants that Plaintiff has failed to comply with the PSLRA's pleading requirement. In opposing Defendants' argument, Plaintiff relies on averments of his amended complaint that "the misrepresentations and omissions were part of a *fraudulent scheme* concocted by the Defendants," (Am. Compl. ¶ 40), "that the Defendants *knew* these representations to be false and fraudulent," (*id.* ¶¶ 19 and 41), and that "Defendants made the misrepresentations and omissions with *reckless disregard for the truth.*" (*Id.* ¶¶ 46 and 51). (Doc. 19, Pl.'s Opp'n Brief at 2) (emphasis added in the brief).

The difficulty is that none of these averments is accompanied by particular facts supporting them or facts that Plaintiff otherwise believes gives rise to a strong inference that the defendant acted with scienter, as required by the PSLRA. The complaint therefore does not adequately plead scienter.

> 3. *Plaintiff Has Failed to Plead With*
> *Specificity the Misleading Statements*
> *or Omissions and the Reason or Reasons*
> *Why the Misrepresentations or Omissions*
> *Were Misleading*

Defendants next argue that Plaintiff has failed to allege with particularity the misleading statements or omissions

and why the statements were misleading. As noted above, if a plaintiff alleges that a defendant "made an untrue statement of material fact" or "omitted to state a material fact" that was necessary to make a statement made not misleading in the circumstances, "the complaint [must] specify each statement alleged to have been misleading" [and] the reason or reasons why the statement is misleading . . ." 15 U.S.C. § 78u-4(b)(1)(A) and (B).

We agree with Defendants that Plaintiff has not pled with specificity the misrepresentations or omissions. We need not go through the entire list in paragraph 17; we need only note, for example, for the first three alleged misrepresentations that Plaintiff has not specified what use or intended use Defendants had for Plaintiff's investment, what was the nature and quality of the risks involved in the investments, and what were the substantial management rights Plaintiff did not have.[7]

We also agree with Defendants that Plaintiff has failed to plead why the alleged misrepresentations are misleading. In fact, the complaint is completely silent in this regard.

---

[7] Defendants also argue that the purported misrepresentations are not misleading. We do not address this argument, as we intend to grant leave to amend, but Defendants may renew it at a later date, if appropriate. They may also later renew their argument about the lack of duty to disclose.

In opposition, Plaintiff argues two points. First, he need not plead why the statements were made. That is true. Motive need not necessarily be pled. *Tellabs, supra,* ___ U.S. at ___, 127 S.Ct. at 2511. But the deficiency (in part) in his pleading is not the failure to allege why the statements were made; it is the failure to plead why they were misleading. Second, Plaintiff asserts, in a circular fashion, that the statements were misleading because they were false and fraudulent representations. But Plaintiff must "specify" why the statements were misleading, as required by 15 U.S.C. § 78u-4(b)(1)(B), not make conclusional assertions. *See also Winer Family Trust, supra,* 503 F.3d at 326.[8]

> 4. *Plaintiff Has Otherwise Failed to Plead the 10b-5 Claim with the Particularity Required by the PSLRA and Fed. R. Civ. P. 9(b)*

Defendants argue that Plaintiff has failed to distinguish among the defendants, simply grouping them together in the allegations that they made misrepresentation and omissions. Defendants contend this violates the pleading requirements of the PSLRA and Rule 9(b). We agree. *See Winer Family Trust, supra,* 503 F.3d at 335-36 ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating

---

[8] Defendants have also argued that Plaintiff has improperly relied on the group pleading doctrine. *See Winer Family Trust,* 503 F.3d at 334-35. We do not think Plaintiff is relying on that doctrine, but, in any event, the objection is covered by our decision immediately below under the PSLRA and Rule 9(b) to require Plaintiff to specifically allege the involvement of each defendant.

each defendant's involvement in misstatements and omissions.");
*In re: Suprema Specialties,* 438 F.3d at 276 (applying Rule
9(b)); *see also Key Equity Investors, Inc. v. Sel-Leb Marketing,
Inc.*, 246 Fed. Appx. 780, 785 n.6 (3d Cir.
2007)(nonprecedential)(applying both the PSLRA and Rule 9(b)).

Plaintiff has requested an opportunity to amend his
10b-5 claim if we decide it is deficient. We will grant that
request and allow leave to amend the claim.

    B.   *Counts One and Three and the Applicable
        Statutes of Limitations*

        1. *The One-Year Statute of Limitations
          Applicable to Claims under Section 12(a)(1),
          15 U.S.C. § 77l(a)(1), Bars the
          Nonregistration Claims in Count One
          Based on Any of the Agreements*

Defendants argue the statute of limitations bars
nonregistration claims under Count One based on any of the
agreements. Count One is a claim under section 12(a)(1) of the
Securities Act of 1933, 15 U.S.C. § 77l(a)(1), for failing to
register the agreements as required by 15 U.S.C. § 77e(a). The
statute of limitations for a claim under section 77l(a)(1) is
set forth in 15 U.S.C. § 77m. In pertinent part, section 77m
provides that no action can be filed to enforce section
77l(a)(1) "unless brought within one year after the violation
upon which it is based" and "[in] no event . . . more than three
years after the security was bona fide offered to the public."
The one- and three-year time periods both have to be satisfied

so that a plaintiff has to file within one year of the violation and within three years after the security was offered to the public. *Ballenger v. Applied Digital Solutions, Inc.*, 189 F. Supp. 2d 196, 199 (D. Del. 2002). The date of the violation is the later of the offer, sale or delivery of the security. *Pell v. Weinstein*, 759 F. Supp. 1107, 1111 (M.D. Pa. 1991); *In re Elec. Data Systems Corp. "ERISA" Litigation*, 305 F. Supp. 2d 658, 680 (E.D. Tex. 2004). Defendants therefore argue that Count One is time-barred because Plaintiff's last purchase of a working interest was by the agreement dated October 14, 2005, and this lawsuit was filed on August 3, 2007, more than one year later.

In opposition, Plaintiff contends that the statute of limitations is simply not appropriate for resolution at the pleading stage and that it can only be resolved after discovery by way of a motion for summary judgment. He also contends that resolution at the pleading stage is not proper because the timeliness of the action depends upon the inquiry the reasonable investor would be expected to make based on the circumstances, citing *Nappier v. PriceWaterhouse Coopers LLP*, 227 F. Supp. 2d. 263, 274 (D.N.J. 2002).

We reject Plaintiff's position. The defense of the statute of limitations can be resolved at the pleading stage if it "appear[s] on the face of the complaint." *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435

24

F.3d 396, 400 n.14 (3d Cir. 2006). Additionally, Plaintiff's reliance on *Nappier* is misplaced because that case dealt with the statute of limitations for a 10b-5 claim, which is materially different from the statute of limitations set forth in section 77m for a section 77*l*(a)(1) claim.

Neither the discovery rule nor equitable tolling applies to the one-year period of limitations for filing a section 77*l*(a)(1) claim. *Pell*, *supra*, 759 F. Supp. at 1111; *Blatt v. Merrill Lynch*, 916 F. Supp. 1343, 1352-53 (D.N.J. 1996); *In re Elec. Data Systems Corp.*, *supra*, 305 F. Supp. 2d at 680; *Hanson v. Johnson*, 2003 WL 21639194, at *3 (D. Minn.). There is apparently a split in authority, *Blatt*, 916 F. Supp. at 1352-53 (collecting cases), but, for the reasons given in *Blatt*, *id.*, we agree with those courts that do not apply the discovery rule or equitable principles to the one-year statute of limitations for a section 77*l*(a)(1) claim. Thus, the statute begins to run "from the date of the violation regardless of whether the plaintiff knew of the violation." *Pell*, 759 F. Supp. at 1111.

The dates of any violations in the instant case would be the dates the interests were purchased, *id.*, and these would be the dates Plaintiff entered into the agreements as alleged in the complaint. The last agreement was executed on October 14, 2005, and this lawsuit was filed on August 3, 2007, more than one year later.  Count I is thus time-barred. *See Hanson*, *supra*,

2003 WL 21639194, at *2 and 5 (section 77*l*(a)(1) claim based on a series of financial documents was barred by the one-year statute of limitations when the latest document was executed more than one year before suit was filed).

> 2. *The Three-Year Statute of Limitations*
> *Applicable to Claims under Section 12(a)(2),*
> *15 U.S.C. § 77l(a)(2), Acts as a Partial Bar*
> *to Count Three, Barring Any Claims Based*
> *on Agreements Entered into Three Years*
> *Before Suit Was Filed*

Defendants argue that Count Three is barred by the statute of limitations. Count Three is a claim under section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2), for "prospectuses and communications" allegedly containing misleading, untrue statements of material fact, or omissions of material fact.

The statute of limitations for a claim under section 77*l*(a)(2) is also set forth in 15 U.S.C. § 77m. Like the statute of limitations for a section 77*l*(a)(1), the statute sets forth separate one- and three-year periods. Beyond that, however, the language is different. In pertinent part, section 77m provides that no action can be filed to enforce section 77*l*(a)(2) "unless brought within one year after the discovery of the untrue statement or the omission or after such discovery should have been made by the exercise of reasonable diligence" or "more than three years after the sale" of the security. The three-year period is a statute of repose. *Del Sontro v. Cendant Corp.*, 223

F. Supp. 2d 563, 570 (D.N.J. 2002). *Accord Walck v. Am. Stock Exch., Inc*, 687 F.2d 778, 791-92 (3d Cir. 1982)(similar limitations period in 15 U.S.C. § 78j created absolute bar when it prohibited suit three years "after such violation").

Defendants' first argument that Count Three is barred is based on the three-year statute of repose. Defendants contend that this three-year limitations period bars suit on the four agreements that were entered into on March 29, 2004, April 22, 2004, July 20, 2004, and July 20, 2004, more than three years before suit was filed on August 3, 2007. We agree. *See Del Sontro*, *supra*, 223 F. Supp. 2d at 572-73.

Citing *Kroungold v. Triester*, 407 F. Supp. 414, 419 (E.D. Pa. 1975), Defendants next argue that the remainder of Count Three is time-barred because Plaintiff had an affirmative duty to plead facts in his complaint showing that his claim is timely. But he failed to do so.

We disagree. *Kroungold,* citing precedent, does say that a plaintiff has "the obligation of affirmatively pleading sufficient facts in the complaint to demonstrate conformity with" section 77m, on the rationale that "it has been held" that section 77m "is an essential ingredient of any private cause of action based upon" section 77*l*(a)(2). 407 F. Supp. at 419. Consistent with this approach, the court did require the plaintiff there to file an amended complaint alleging facts showing why the securities fraud had not been discovered sooner

and the diligence the plaintiff exercised to discover the fraud. *Id.* This rule has been followed in other cases as well. *See Cook v. Avien, Inc.*, 573 F.2d 685, 695 (1st Cir. 1978)(the plaintiff has the burden of proving compliance with the statute of limitations for a section 77*l*(a)(2) claim and a 10b-5 claim, citing cases in support); *In re Prudential Ins. Co. of America Sales Practices Litigation*, 975 F. Supp. 584, 598 and n.10 (D.N.J. 1996).

However, since *Kroungold*, other courts have considered the rule and have decided the opposite, that a plaintiff in a securities fraud case need not allege compliance with the statute of limitations. In *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718-19 (7th Cir. 1993), in extensive dictum, the Seventh Circuit criticized cases that adhered to the rule, saying they substituted a "conclusion" for an "explanation" and that the rule made no sense since the statute of limitations is an affirmative defense. In *Johnson v. Aljian*, 490 F.3d 778, 781 n.13 (9th Cir. 2007), *cert denied*, 76 U.S.L.W. 3316 (U.S. March 17, 2008), the Ninth Circuit rejected the defendants' argument that the statute of limitations was an element of a 10b-5 claim, refusing to follow the "archaic rule" that a statute of limitations becomes part of the cause of action simply because it is part of the statute that creates the cause of action.[9] *See*

---

[9] The court did note, however, that the rule "survived" in the Ninth Circuit for section 77*l*(a) claims, based on precedent, *Toombs v. Leone*, 777 F.2d 465 (9th Cir. 1985).

*also Dalicandro v. Legalgard, Inc.*, No. 99-3778, 2004 WL 250546, at *5 n.11 (E.D. Pa. Jan. 21, 2004)(in part citing *Tregenza* in holding that it is the defendant who must initially provide proof that the securities case is untimely).

Based on *Tregenza* and *Johnson*, we decline to follow *Kroungold*.[10] We therefore conclude that the plaintiff in a securities fraud case has no obligation to plead facts showing that his cause of action is timely under the applicable statute of limitations. Rather, as the Third Circuit stated in *Benak*, *supra*, 435 F.3d at 400 n.14, also involving a section 77*l*(a) claim, the statute of limitations is an affirmative defense. It follows that we must deny the motion to dismiss Count Three to the extent it is based on the agreements entered into within three years of the filing of the lawsuit, those set forth in paragraph 12(e) through (i) of the amended complaint.

    C.  *Plaintiff Must Amend Count III*
        *to Plead With Specificity*

Defendants contend that Count III should be dismissed for the same pleading deficiencies identified in regard to the 10b-5 claim. Since Count III incorporates the allegations of fraud set forth in the 10b-5 claim, it is subject to the requirements of Rule 9(b). *Shapiro v. UJR Fin. Corp.*, 964 F.2d

---

[10] We note that in *Pennsylvania Co. v. Deckert*, 123 F.2d 979, 985 (3d Cir. 1941), the Third Circuit recited with seeming approval the "archaic rule" described in *Johnson*, but it was dictum in *Deckert*, so *Deckert* is not significant here.

272, 288 (3d Cir. 1992). Accordingly, Count III is deficient,
but Plaintiff will be granted leave to amend so that this count
can be pled with specificity.[11]

> D.   *Plaintiff Will Be Required to*
>      *Plead that the Agreements Were*
>      *Part of a Public Offering*

Defendants have moved to dismiss Counts One and Three
for Plaintiff's failure to plead that the agreements were part
of a public offering, as section 77*l*(a) applies only to public
offerings, not private transactions. *See Lewis v. Fresne*, 252
F.3d 352, 357 (5th Cir. 2001). In opposition, Plaintiff argues
in part that his allegations that the agreements were not
registered and not exempt from registration are sufficient and
that, in any event, he can amend his complaint to allege that
the agreements were a public offering. Since we are requiring
Plaintiff to file an amended complaint for his 10b-5 claim, we
will accept Plaintiff's offer to allege that the agreements were
public offerings and will order him to make the necessary
allegation in an amended complaint.

---

[11] Count III is not subject to the PSLRA because the PSLRA
applies only to causes of action created under the Securities and
Exchange Act of 1934, not the Securities Act of 1933. Section 78u-
4(b)(1) begins, "In any private action arising under this chapter," a
reference to the 1934 act. *See also Giarraputo v. UNUM Provident
Corp.*, 2000 WL 1701294, at *9 (D. Me.)("the PSLRA does not place a
parallel provision to § 78u-4(b) in the Securities Act").

> E.   *Count Four Will be Dismissed Because*
>      *Plaintiff Concedes There Is No Private*
>      *Right of Action Under Section 17 of the*
>      *Securities Act of 1933, 15 U.S.C. § 77q*

In Count Four, Plaintiff sets forth a claim for a violation of section 17 of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1) and (2) and section 77q(b), by alleging that Defendants used the mail to employ a device, scheme, or artifice to defraud Plaintiff and to obtain money by their material misstatements and omissions.

Defendants have moved to dismiss this count, arguing that there is no private cause of action under section 17. They cite in support *Kimmel v. Peterson*, 565 F. Supp. 476, 488 (E.D. Pa. 1983), and *Metropolitan Int'l, Inc. v. Alco Standard Corp.*, 657 F. Supp. 627, 632 (M.D. Pa. 1986). Since Plaintiff concedes there is no private cause of action, this count will be dismissed.

> F.   *For Those Agreements Covered by*
>      *Pennsylvania Law, Count II Is Barred*
>      *by the Two-Year Statute of Limitations*

Count Two is a claim under the Pennsylvania and New Jersey state-law counterparts to section 77e(a); in Pennsylvania, 70 P.S. § 1-201 (Purdon's 2004), and in New Jersey, N.J.S.A. 49:3-60. These state statutory provisions prohibit the sale of unregistered and nonexempt securities.

Defendants have moved to dismiss Count Two for those "Agreements implicating Pennsylvania law," (Doc. 15, Defs.'

Supporting Br. at 14), as time-barred under the statute of limitations. We take Defendants' meaning to be the first five agreements, the agreements executed while he apparently was living in Pennsylvania, based on the Pennsylvania address listed in the agreements.

70 P.S. § 1-502 (Purdon's 2004) creates a private cause of action for a violation of section 1-201. Under 70 P.S. § 1-504(b) (Purdon's 2004 & Purdon's Supp. 2007-08), an action "to enforce any liability created under section 502" must be brought "before the expiration of two years after the violation upon which it is based . . . ."[12] Since the first five agreements were executed more than two years before suit was filed, Defendants argue that the section 1-201 claim (by way of section 1-502) is time-barred.

Plaintiff has not opposed this argument, and we agree with Defendants. The relevant agreements were executed between March 29, 2004, and November 4, 2004, well in excess of two years before suit was filed on August 3, 2007. The nonregistration claim under Pennsylvania law is therefore time-barred. *See Bull v. Am. Bank & Trust Co.*, 641 F. Supp. 62, 70 (E.D. Pa. 1986).

---

[12] The action must also be brought before "the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting such violation, whichever shall first expire." *Id.*, § 1-504(b). The earliest limitations period controls. *Id.*

G.  *The State-law Claims in Counts Six and
    Seven Fail to Plead With the Requisite
    Specificity*

Based on their arguments against the 10b-5 claim,
Defendants move to dismiss Count Six, setting forth the
Pennsylvania and New Jersey state-law securities fraud claims
that are counterparts to a 10b-5 claim, and Count Seven, a claim
for common-law fraud. Plaintiff does not specify whether Count
Seven is brought under a particular state's law, but we will
assume he intends to bring it under both Pennsylvania and New
Jersey law.[13]

The Pennsylvania securities claim, 70 P.S. § 1-401
(Purdon's 2004), and the New Jersey securities claim, N.J.S.A. §
49:3-52, have essentially the same elements as a 10b-5 claim.
*See Fox Int'l Relations v. Fiserv Securities, Inc.*, 490 F. Supp.
2d 590, 602 (E.D. Pa. 2007)(section 1-401); *Kronfeld v. First
Jersey Nat'l Bank*, 638 F. Supp. 1454, 1473 (D.N.J. 1986)(section
49:3-52). These claims incorporate the allegations of
misrepresentation and omission that form the basis of the 10b-5
claim. The state-law fraud claims also rely on the same
allegations of misrepresentation.

We agree with Defendants that, under Rule 9(b), we can
dismiss the state-law securities claims and fraud claims for the
same reasons we found Plaintiff's 10b-5 claim deficient, a lack
of specificity in the allegations discussed above. However, this

---

[13] We will assume the same for Count Eight, discussed below.

conclusion does not include the failure to properly plead the scienter element. The scienter element was found wanting because of the PSLRA's heightened pleading requirement for causes of action under the Securities and Exchange Act of 1934, a requirement that does not apply to state-law claims.

But Rule 9(b) does apply to state-law claims as well as to federal ones, *Petruska v. Gannon University*, 462 F.3d 294, 310 (3d Cir. 2006), and, as noted, all of these claims incorporate the deficient fraud allegations of the 10b-5 claim. Hence, (except as to scienter) they must be dismissed for lack of specificity. *See Majer*, *supra*, 2008 WL 282257, at *18 (dismissing a claim under Pennsylvania's securities law section 1-401 and a Pennsylvania common-law fraud claim on basis of dismissal of the 10b-5 claim).

As we did with the 10b-5 claim, however, we will grant Plaintiff leave to amend these state-law claims.

H.   *Count Eight, Setting Forth the State-Law*
     *Negligent Misrepresentation Claims,*
     *Must be Dismissed For Failing to Allege*
     *the Requisite Proximate Cause*

Defendants also moved to dismiss Count Eight, setting forth negligent misrepresentation claims under Pennsylvania and New Jersey law, based on the same arguments against the 10b-5 claim. We agree Count Eight should be dismissed, but on a different, and solo, ground, that Plaintiff has failed to allege the requisite proximate cause, as required by *Dura*, *supra*, and

34

*McCabe*, *supra*.[14] These cases simply applied general causation principles to a 10b-5 claim, *see McCabe*, 494 F.3d at 438-39, and hence apply equally to a state-law claim. *See McCabe*, 494 F.3d at 438-39 (rejecting fraud and negligent misrepresentation claims under New Jersey law on the same basis that the 10b-5 claim was rejected, an inadequate allegation of proximate cause). We note here that negligent misrepresentation under Pennsylvania law also has a causation element. *See Gibbs v. Ernst*, 538 Pa. 193, 212-13, 647 A.2d 882, 891 (1994) (describing elements of negligent misrepresentation under Pennsylvania law, including a requirement for proximate cause); *Bouriez v. Carnegie Mellon Univ.*, No. 02-2104, 2007 WL 2492735, at *5 (W.D. Pa. Aug. 30, 2007).

        As we did with the 10b-5 claim, however, we will grant Plaintiff leave to amend this state-law claim.[15] We will issue an appropriate order.

                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge

Date: April 3, 2008

---

[14] Rule 9(b) does not appear to apply to negligent misrepresentation claims, as opposed to fraud claims. *See Guaranty Towers, LLC v. Cellco Partnership*, No. 07-0554, 2007 WL 2617651, at *5 (M.D. Pa. Sept. 6, 2007)(Caldwell, J.). Hence, we cannot demand for Count Eight the specificity required by that rule.

[15] Defendants have also moved to dismiss Counts One through Four and Six through Nine as against the individual defendants, arguing they cannot be liable for their corporations' liabilities. However, they have cited no authority, so we reject this argument because of the inadequate briefing.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


KEVIN JOYCE,                          :
          Plaintiff
                                      :

          vs.                         :    CIVIL NO. 1:CV-07-1421

BOBCAT OIL & GAS, INC.,               :
BEAR CREEK OIL & GAS, INC.,
ELLIS MEISTER and                     :
GORDON TUCK,
          Defendants                  :


*O R D E R*


AND NOW, this 3rd day of April, 2008, upon

consideration of Defendants' motion to dismiss (doc. 14), it is

ordered that:

     1.  Count One, the claim under 15 U.S.C.
§ 77*l*(a)(1) for failing to register the
agreements, is dismissed as time-barred.

     2.  Count Two, as it is based on a
violation of Pennsylvania law, 70 P.S. § 1-
201, for the five agreements listed in
paragraph 12(a) through (e) of the amended
complaint is dismissed as untimely. In all
other respects, Count Two remains viable.

     3.  Count Three, the claim under 15
U.S.C. § 77*l*(a)(2), as it is based on the
four agreements listed in paragraph
12(a)through (d) of the amended complaint,
is dismissed as untimely under the three-
year statute of repose.

     4.  In all other respects, Count Three is
dismissed for failing to allege that the
agreements were part of a public offering.

     5.  Count Four, the claim under 15 U.S.C.
§ 77q, is dismissed.

6.   Count Five, the claim under Rule 10b-5, is dismissed for failing to plead the claim  with the specificity required by the PSLRA and Fed. R. Civ. P. 9(b) and for failing to allege the requisite proximate cause.

7.   Count Six, setting forth Pennsylvania and New Jersey state-law securities fraud claims, and Count Seven, setting forth claims under Pennsylvania and New Jersey law for common-law fraud, are dismissed for failing to plead the claims with the specificity required by Fed. R. Civ. P. 9(b).

8.   Count Eight, setting forth negligent misrepresentation claims under Pennsylvania and New Jersey law, is dismissed for failing to allege the requisite proximate cause.

9.   Plaintiff is granted twenty days from the date of this order to amend the following claims: (a) Count Three, to allege the remaining agreements were part of a public offering; (b) Counts Five, Six, Seven and Eight, to plead with the requisite specificity and to allege the requisite proximate cause, as discussed in the accompanying memorandum.

10. If Plaintiff fails to comply with this order, this action will proceed solely on the remaining claims.


/s/William W. Caldwell
William W. Caldwell
United States District Judge


2